**Amy SIPES and Tana (Trevino) Waddell, Appellants,**

v.

**CITY OF GRAPEVINE, Appellee.**

No. 2–02–323–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 31, 2004.

Strasburger & Price, LLP and Katie Anderson, Dallas, TX, and Misty A. Hataway, Houston, TX, for Appellants.

Maher Law Firm, and Constance Maher, Arlington, TX, for Appellee.

Panel B: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I.  Introduction

Amy Sipes and Tana Trevino n/k/a/ Tana Waddell appeal the trial court's summary judgment in favor of the City of Grapevine.  In three issues on appeal, appellants assert that the City did not establish as a matter of law that it is immune from suit, that its actions were not a proximate cause of appellants' injuries, or that it did not receive actual notice of Trevino's

claim. We affirm in part and reverse and remand in part.

## II. Factual and Procedural Background

Appellants were injured in an automobile accident on November 28, 1997, as they traveled to the newly opened Grapevine Mills Mall. Following the instructions for mall traffic on a large, electronic message board, they exited on State Highway Business 114 and traveled northbound on Business 114 to the intersection of Business 114 and Highway 26/Northwest Highway, which was under construction. At the intersection, Sipes, who was driving, stopped at the temporary stop sign and noted that the pavement markings were confusing because "there were lines going everywhere." Her vision was obstructed by concrete traffic barricades (also referred to as jersey barriers), barrels, and a "road closed" sign to the left of her vehicle. As Sipes "inched out" from behind the temporary stop sign, a pickup truck traveling eastbound at 47 miles per hour on Highway 26 struck the driver's door of her vehicle. Both Sipes and Trevino were injured.

Appellants sued the City, the Texas Department of Transportation (TXDOT), Sunmount Corporation, and Jerry Gaston, the pickup driver. Appellants sued the City for negligence and gross negligence and alleged that the City and TXDOT entered into a joint enterprise to expand Northwest Highway to accommodate mall traffic. Appellants also pleaded that the City was not immune from suit because it engaged in proprietary acts that resulted in appellants' injuries.

The City filed a motion for summary judgment and two supplemental motions for summary judgment as appellants amended their petition after the first and second motions were filed. In its motions, the City asserted that it was a governmental entity entitled to sovereign immunity, its sovereign immunity had not been waived, Trevino did not give statutorily required notice, and the actions of others were the sole cause of appellants' injuries. After a hearing, the trial court granted the City's motions for summary judgment and severed appellants' claims against the City from the underlying case.

On appeal, appellants claim that the City failed to establish as a matter of law that it is immune from suit and that there are issues of material fact concerning the City's affirmative defense of sovereign immunity. Appellants also claim that genuine issues of material fact exist concerning whether the City's actions were the proximate cause of appellants' injuries and whether the City received actual notice of Trevino's claim.

## III. Standard of Review

### A. Characterization of the Motions

With one exception, the City did not state in its motion or supplemental motions for summary judgment whether it was seeking a traditional summary judgment or a no-evidence summary judgment, and it intermixed language from the traditional summary judgment rule and the no-evidence summary judgment rule throughout its motions and its briefs to this court. Compare TEX.R.APP. P. 166a(c) with TEX. R.APP. P. 166a(i). The two forms of summary judgment are distinct and invoke different standards of review. Adams v. Reynolds Tile & Flooring, Inc., 120 S.W.3d 417, 419–20 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

A summary judgment motion must give fair notice to the non-movant of the basis on which the summary judgment is sought. TEX.R.APP. P. 166a; Waite v. Woodard, Hall & Primm, 137 S.W.3d 277, 280 (Tex.

App.-Houston [1st Dist.] 2004, no pet.). If a motion clearly sets forth its grounds and otherwise meets rule 166a's requirements, it is sufficient to raise both traditional and no-evidence grounds for summary judgment, even if the motion does not clearly delineate or segregate those grounds. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

In its motion for summary judgment, the City asserts that there is no evidence of proximate cause as to the condition or use of any tangible property and expressly asserts that it is entitled to summary judgment on that ground pursuant to rule 166a(i). None of the other grounds raised in the motion or supplemental motions refer to either rule 166a(c) or 166a(i), but use both "matter of law" language and words such as "failed to establish" or "cannot establish." Because the City gave appellants notice that it sought a no-evidence summary judgment on the proximate cause issue, but not concerning the other grounds raised in the motions, we construe the portion of the motion concerning the proximate cause issue to have been brought under rule 166a(i) and the remainder of the City's grounds for summary judgment to have been brought under rule 166a(c). *Binur*, 135 S.W.3d at 651; *Waite*, 137 S.W.3d at 280.

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

### B. Rule 166a(i) Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) & cmt.; *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002).

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *Johnson*, 73 S.W.3d at 197; *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

### C. Rule 166a(c) Standard of Review

In a traditional summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Southwestern Elec. Power Co.*, 73 S.W.3d at 215; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Southwestern Elec. Power Co.*, 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve*

*Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ When a governmental unit raises the affirmative defense of sovereign immunity in a summary judgment motion, it must establish the affirmative defense as a matter of law. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996); *Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 552 (Tex. App.-Waco 2001, no pet.). Once the movant establishes sovereign immunity as a matter of law, the burden of production shifts to the non-movant to establish a waiver of immunity. *Thompson*, 57 S.W.3d at 552. Even though the burden of production shifts, the burden of proof remains with the movant to negate any issues raised by the non-movant and conclusively establish its entitlement to summary judgment as a matter of law. *Id.*

### IV. Sovereign Immunity

In its summary judgment motions, the City asserted that it enjoyed sovereign immunity because (1) the City's exercise of discretion is not a basis for liability, (2) there was no condition or use of tangible property owned or controlled by the City that proximately caused appellants' injuries, (3) any condition at the intersection was only a premises defect of which Sipes had been warned by others, and (4) it was not engaged in any proprietary function that constituted a waiver of immunity. Appellants contend that the trial court erred by granting summary judgment on any of these bases.

■ Under the doctrine of sovereign immunity, the State and its agencies are generally immune from suit unless the State gives its consent to be sued. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The City, a governmental unit, is immune from both suit and liability for appellants' injuries unless its immunity is waived by the terms of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.025 (Vernon 1997). The threshold inquiry is whether immunity has been waived under section 101.021, which states that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2).

There are exceptions to section 101.021(2)'s waiver provision, however. Even if waiver would be established under section 101.021, the City retains sovereign immunity for claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2). Additionally, the State retains its sovereign immunity from claims based on

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

*Id.* § 101.056. In other words, the State remains immune from suits arising from its discretionary acts and omissions. *See State v. Rodriguez*, 985 S.W.2d 83, 85–86 (Tex.1999).

■ But the City can be held liable for negligent implementation of a discretionary act. *City of Fort Worth v. Robles*, 51

S.W.3d 436, 440 (Tex.App.-Fort Worth 2001, pet. denied); *Tex. Dep't of Transp. v. Bederka,* 36 S.W.3d 266, 271 (Tex.App.-Beaumont 2001, no pet.); *Zambory v. City of Dallas,* 838 S.W.2d 580, 582 (Tex.App.-Dallas 1992, writ denied); *see* Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2). Section 101.060 reiterates this principle within the specific context of traffic control devices:

> (a) This chapter does not apply to a claim arising from:

>> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

>> (2) the absence, condition or malfunction of a traffic or road sign, signal, or warning device *unless the absence, condition or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice;*
>> . . . .

Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(1) & (2) (emphasis added). Thus, the Act provides plaintiffs the opportunity to sue cities for claims arising from the absence, condition, or malfunction of any road sign, signal, or warning device, provided that the governmental unit had notice of the problem and failed to act within a reasonable time. *Id.; Robles,* 51 S.W.3d at 440; *Zambory,* 838 S.W.2d at 583.

■■■ A city's initial decision-making process regarding whether to install a traffic control device is discretionary; however, once the city makes the decision to install a traffic control device, it has no discretion but to do so within a reasonable time. *Robles,* 51 S.W.3d at 442; *Bederka,* 36 S.W.3d at 272; *Zambory,* 838 S.W.2d at 582–83. If the traffic control device is not installed after the policy decision is made to do so, then it would constitute "absence"

under section 101.060(a)(2). Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2); *Robles,* 51 S.W.3d at 442; *Bederka,* 36 S.W.3d at 272. Thus, the Act waives immunity when the city exercises its discretion in deciding to install a traffic control device but does not implement that decision within a reasonable amount of time. Tex. Civ. Prac. & Rem.Code Ann. § 101.060(a)(2); *Robles,* 51 S.W.3d at 442. Reasonableness is a fact issue for the trier of fact that is rarely appropriate in a summary judgment. *Zambory,* 838 S.W.2d at 583.

■■■ Appellants claimed that the City did not install the temporary traffic signal within a reasonable time after deciding that a temporary signal was needed. Appellants' evidence filed in response to the City's motion for summary judgment establishes that the traffic control plan, which was based on plans prepared by an engineering firm hired by the City, called for a permanent traffic control light at the intersection where the collision in question occurred but did not include any temporary traffic control devices for the intersection during construction. In August or September 1997, before construction began, the City had requested that a temporary traffic signal be installed at the intersection. After construction began in September, the City determined that installation of the temporary signal was a priority. After the mall opened in late October, the intersection became a high-accident site with a significant increase in collisions, the majority of which involved northbound vehicles on Business 114 being hit by eastbound vehicles on Highway 26, as happened in this case.

When TXDOT told the City that a traffic warrant study documenting the need for a temporary signal was required before it would approve the installation and that TXDOT did not have the funds to pay for a temporary signal, the City funded the

warrant study, made funds available to pay for the temporary signal, and contacted a company to install the signal once TXDOT approval was obtained. On October 29, 1997, City officials met at the intersection, which they described as unsafe, to coordinate the scheduled November 7, 1997 installation of the temporary signal. But the temporary signal was not installed until December 5, 1997, one week after appellants' wreck.

The City contends that it is entitled to immunity because it could not install the temporary signal without TXDOT's approval. The City provided no evidence, however, of its attempts to follow-up on obtaining TXDOT approval after the City made the decision to install the temporary signal, nor did it show when TXDOT approval was actually obtained.[1] The City's Director of Public Works stated that he had no idea why the signal was not installed prior to appellants' wreck. Likewise, the City's Assistant Director of Public Works stated that he could not provide any reason why the City could not have erected the signal before appellants' wreck.

In this case, the City exercised its discretion and decided to install a temporary traffic signal at the intersection where appellants' wreck occurred, but we conclude that a question of material fact exists concerning whether the City properly implemented its decision by installing the temporary traffic signal within a reasonable time thereafter. Thus, we hold that the trial court erred in granting summary judgment on appellants' claim of negligent implementation of a discretionary act.

■ Appellants asserted that a condition at the intersection consisting of traffic barricades, barrels, and a road closed sign obstructed their vision of traffic to the left of the intersection and, thus, caused the accident. In its summary judgment motions, the City asserted that no condition or use of tangible property owned or controlled by the City caused appellants' injuries because the City did not own and had no authority concerning any tangible or real property at the intersection. In other words, the City asserts that it cannot be liable because it neither owned, used, nor controlled any property at the intersection. The City also claimed that appellants could produce no evidence that the use or condition of tangible property allegedly owned or controlled by the City proximately caused appellants' injuries because any link between the property over which the City purportedly exercised control and appellants' accident is too attenuated to be cognizable under the Act as the proximate cause of appellants' injuries.

■ There is no requirement under the Act that the City own the tangible property that causes the injury. *Sem v. State*, 821 S.W.2d 411, 415–16 (Tex.App.-Fort Worth 1991, no writ). The City may be liable in circumstances in which it assumes control over tangible personal property and the negligent exercise of that control results in personal injury. *Id.* Control may be established by evidence that the City assumed some responsibility for the traffic control devices at the intersection, even though that responsibility was not exclusive. *See County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). But the City is not liable for a condition of property at the intersection if it neither owned nor controlled the proper-

---

1. In its appellate brief, the City states that TXDOT approval was not obtained until after appellants' accident, but it does not support this statement with a reference to the record, and this court's independent review of the record has located no evidence showing when TXDOT approval was obtained.

ty. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex.1986).

■ Furthermore, while the property itself need not be the instrumentality of the alleged harm, there must be a direct and immediate relationship between the injury and the use or condition of the property. *Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 349 (Tex. App.-Houston [14th Dist.] 2003, no pet.); *Gonzales v. City of El Paso*, 978 S.W.2d 619, 623 (Tex.App.-El Paso 1998, no pet.). Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 341, 343 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

The City supported its motions with evidence that the State owned the right-of-way at the intersection, maintained control over the construction project, and placed the traffic control devices at the intersection. The City had altered the traffic control devices to the right of the intersection but was criticized by the State for doing so and, before the accident, returned them to their original location. It was the placement of the traffic control devices to the left of the intersection, not to the right, that appellants claim obstructed their vision, allegedly causing them to enter the intersection where they were struck by oncoming traffic. We conclude that the placement of the traffic control devices by the City was merely an attenuated part of a sequence of events that resulted in appellants' injuries or a condition that made the injuries possible, but it was not a proximate cause of those injuries. Accordingly, the trial court did not err by granting summary judgment on appellants' claim that the City did not enjoy immunity under the Act's condition or use of tangible property provision. *Bossley*, 968 S.W.2d

at 343; *Cherqui*, 116 S.W.3d at 349; *Gonzales*, 978 S.W.2d at 623.

■ In its summary judgment motions, the City also asserted that any defect at the intersection was a premises defect about which appellants had been warned by others. Appellants countered that the obstructions to their view at the intersection constituted a special defect that the City had a duty to warn them about. Liability for premises defects is implied under the Act because premises defects arise from a condition existing on real property. *City of Midland v. Sullivan*, 33 S.W.3d 1, 7 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.). Section 101.021 of the Act waives sovereign immunity for premises liability claims. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000). The theories of liability are based on different standards of care owed. *Id.* Whether a condition is a special defect or a premises defect is a question of law. *State Dep't of Hwys. & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex.1992) (op. on reh'g); *Mogayzel v. Tex. Dep't of Transp.*, 66 S.W.3d 459, 464 (Tex.App.-Fort Worth 2001, pet. denied).

■ The Act specifies that if the claim arises from a premises defect, the duty owed by the governmental entity to the claimant is the same duty that a private person would owe a licensee on private property unless the claimant paid for the use of the premises. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997). The basic duty owed licensees is not to injure them willfully, wantonly, or through gross negligence. *City of San Benito v. Cantu*, 831 S.W.2d 416, 421 (Tex. App.-Corpus Christi 1992, no writ). This duty encompasses the duty to warn or make reasonably safe only if the governmental entity has actual knowledge and the claimant does not. *Id.*

The limitation of duty concerning premises defects does not extend to special defects, however. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b). Where there is a special defect, the governmental entity has the same duty to warn that one owes an invitee. *Payne,* 838 S.W.2d at 237. That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware. *Id.* Where a special defect exists, it is the duty of the governmental unit that owns or controls a roadway to warn of the defect even though that governmental unit did not create the defect. *County of Harris v. Eaton,* 573 S.W.2d 177, 179–80 (Tex. 1978).

Special defects are statutorily defined as "defects such as excavations or obstructions on highways, roads, or streets." *Id.* at 179. Conditions also may be special defects even though they do not occur on the surface of the road. *Payne,* 838 S.W.2d at 238 n. 3. A special defect must be something out of the ordinary course of events, however, rather than a long-standing, routine, or permanent defect. *Villarreal v. State,* 810 S.W.2d 419, 422 (Tex.App.-Dallas 1991, writ denied).

Courts have defined "special defect" as something that presents an "unexpected and unusual danger to ordinary users of the highways," which "unexpectedly and physically impair[s] a car's ability to travel on the road." *Mogayzel,* 66 S.W.3d at 466 (quoting *Payne,* 838 S.W.2d at 238, and *Rodriguez,* 985 S.W.2d at 85); *see Sipes v. Tex. Dep't of Transp.,* 949 S.W.2d 516, 519–20 (Tex.App.-Texarkana 1997, writ denied) (listing examples of special and premises defects).

By appellants' own admissions, they knew they were entering a construction zone, and Sipes admitted that there were sufficient signs to alert her to unexpected dangers at the intersection. Traffic barricades, barrels, and signs are not unexpected or unusual and, in this case, they did not impair appellants' ability to travel on the road. Therefore, we conclude that the obstruction about which appellants complain was a premises defect about which they had adequate warning. We hold that the trial court did not err by granting the City's summary judgment on the premises liability issue.

Appellants also contend that the City is liable as a member of a joint enterprise. The Act waives sovereign immunity for a governmental unit if "the governmental unit would, were it a private person, be liable to the claimant according to Texas law" for personal injury caused by a condition of tangible property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). This waiver encompasses joint enterprise liability, which makes each party the agent of the other and holds each responsible for the negligent act of the other. *Able,* 35 S.W.3d at 613. The elements of a joint enterprise are (1) an agreement, express or implied, among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest among the members in that purpose, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id.*

Appellants contend that the City entered into a joint enterprise with the State for the widening of Business 114. Appellants rely on the Advanced Funding Agreement for Standard Highway Systems (On–System) entered by the State and the City and the testimony of Robert Price to support this argument. According to the agreement, the State would improve the highway and the City would participate "by funding" a portion of the improvements. The agreement also

makes reference to "items of work" that are the responsibility of the City and are to be carried out and completed by the City with no expense to the State, but it does not state what those responsibilities are. Robert Price testified that the City was responsible for providing access to businesses and for assisting the State in identifying and relocating utilities during the construction phase. The City did have a voice to be heard concerning limited aspects of the construction, but it did not have equal control over the construction project. Therefore, there was no joint enterprise, and the City established as a matter of law its right to summary judgment on that theory.

■ Lastly, the City asserted that it did not receive notice of Trevino's claim. The Act provides that a governmental unit is entitled to receive written notice of a claim not later than six months after the day that the incident giving rise to the claim occurred. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1997). The notice must reasonably describe the damage or injury claimed, the time and place of the incident, and the incident. *Id.* The Act also contains an exception to this written notice requirement when the governmental unit "has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c) (Vernon 1997).

Sipes provided the City with written notice, but Trevino did not. On appeal, appellants argue that the trial court erred by granting summary judgment against Trevino because they claim the City received actual notice of Trevino's claims when the City's police officers investigated the accident and through the police reports.

The supreme court recently addressed the actual notice requirement in *Texas De-*

*partment of Criminal Justice v. Simons,* in which it held that actual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and a subjective awareness that its fault produced or contributed to the claimed injury. 140 S.W.3d 338, 348 (Tex., 2004). The supreme court also explained that it is not enough that a governmental unit investigated an incident or should have known from the investigation that it might have been at fault. *Id.* Instead, the governmental unit must have subjective awareness of its fault to trigger the actual notice requirement. *Id.* The supreme court also noted that actual notice is a fact question when the evidence is disputed, but in many instances, actual notice can be determined as a matter of law. *Id.*

Here, the police report indicates the time and place of the accident and describes the accident. It also states that Trevino was taken by ambulance to the hospital, but it makes no other mention of her injuries. The report described the road conditions as "obstructed view construction zone." Based on this evidence, we conclude that, as a matter of law, Trevino failed to comply with the Act's notice requirements because there is no evidence the City had subjective awareness that its fault produced or contributed to Trevino's injuries. Thus, the trial court did not err in granting summary judgment on the notice issue.

## V. Conclusion

We reverse the trial court's summary judgment in favor of the City on the issue of negligent implementation of a discretionary act issue and remand that issue to the trial court for trial. We affirm the

remainder of the trial court's summary judgment.