COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-177-CV

 

ROBERT
ORTEGREN AND                                                    APPELLANTS

EVA MARIE HENNICKE, 

INDIVIDUALLY AND AS NEXT

FRIENDS OF ARIANA N.
ORTEGREN,

A MINOR CHILD, AND ON
BEHALF 

OF THE STATUTORY
BENEFICIARIES 

OF ROBERT T. ORTEGREN,
DECEASED

                                                                                                        

 

                                                   V.

 

THE CITY OF DENTON                                                            APPELLEE

 

                                              ------------

 

            FROM THE 211TH
 DISTRICT COURT OF DENTON
COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellants Robert Ortegren and Eva Marie
Hennicke, individually and as next friends of Ariana N. Ortegren, a minor
child, and on behalf of the statutory beneficiaries of Robert T. Ortegren,
deceased, brought a personal injury and wrongful death and survival action
against Appellee, the City of Denton. 
Because we hold that the trial court did not err in granting the City=s motion
for summary judgment regarding Appellants= notice
of claim, we affirm the trial court=s
judgment. 

On November 27, 2001, Appellant Eva Hennicke was
driving a van on Mayhill Road, an old county road annexed by the City.  After her right tires allegedly left the
paved portion of the road to the right, Eva veered left into an oncoming lane,
resulting in an accident.  Eva and Ariana
Ortegren, Eva and Robert Ortegren=s
daughter, received significant injuries. 
Robert T. Ortegren, their son, died. 








Officer William Burson, a Denton police officer
serving as an accident investigator and reconstructionist, was dispatched to
the scene within minutes of the accident to investigate it.  The same night, Burson went to the hospital
where the patients were taken and spoke with Ariana and Robert (the father)
about the accident.  Ariana told him that
the van went off the road, and when Eva tried to steer back on the road, she
lost control of the van.  The following
day, he went to the wrecking yard to photograph and inspect the vehicles, and
he found freshly scraped metal exposed on the undercarriage of the van.  Two days after the accident, Burson returned
to the scene to take additional photographs of marks on the pavement as well as
an approximately six inch drop-off to the right of the paved roadway.  Burson gave his supervisor a copy of his
reports.  He told his supervisor about
the drop-off and stated that he believed that Eva=s van=s tires
had dropped off of the edge of the road and that she overcorrected in trying to
get back on the road, causing loss of directional control.  Burson also told his supervisor that he
considered the drop-off a hazard and recommended to him that it be repaired
because it could potentially cause some wrecks.[2]  Burson allegedly did not believe that the
City was liable so he did not make the City=s legal
department or risk manager aware of a potential claim.

In its pleadings, the City alleged that
Appellants hired an attorney and an accident reconstruction expert within three
weeks of the accident.  However, the City
did not receive written notice of Appellants= claim
until May 9 or 10, 2002, more than five months after the accident.  The City=s
charter required Appellants to notify the City of their claim within ninety
days of the accident.  Thus, Appellants
notified the City of their claim too late.








Appellants sued the City pursuant to provisions
in the Texas Tort Claims Act,[3]  alleging that the City was liable for the
accident by failing to adequately maintain the area alongside the road.  The City filed a motion for summary judgment
regarding the notice of claim on both traditional and no-evidence grounds.  The trial court granted the motion but did
not state on which basis it granted the motion. 
Appellants moved for a new trial, but their motion was denied by
operation of law.  Appellants filed a timely
notice of appeal.

In three issues on appeal,[4]
Appellants argue that 1) the City=s
no-evidence motion for summary judgment does not specifically challenge or
identify any particular element of Appellants= cause
of action for which the City claims there is no evidence to support, 2) the
City=s
no-evidence motion for summary judgment asserts an affirmative defense (lack of
written and actual notice) that the City has the burden of proof on, and 3) the
trial court erred in granting the City=s  motion for summary judgment regarding the
notice of claim because the summary judgment evidence raised an issue of fact
about the City=s actual knowledge under section
101.101(c) of the Texas Tort Claims Act.[5]








As a preliminary matter, we address Appellants=
argument that because their case allegedly involves a special defect claim,
they are excused from the notice requirements of the statute.  We reject this contention, and Appellants do
not provide authority for their argument.[6]

In their discussions of the first two issues,
Appellants and the City dispute whether the City=s
no-evidence motion for summary judgment specifically identifies any particular
element that the City claims there is no evidence of and whether lack of actual
notice can properly be asserted in a no-evidence motion.  However, we do not reach these issues because
we hold that the trial court could have properly granted the motion on
traditional grounds that the City lacked actual notice as a matter of law.  








Although Appellants claim in their sixth issue
that they raised a genuine issue of material fact as to the City=s actual
notice of its alleged fault, exempting them from the notice requirements of the
Texas Tort Claims ActCSection 101.101 of the Texas
Civil Practice and Remedies CodeCwe
disagree.[7]


The notice provision of the Texas Tort Claims Act
provides as follows:

(a) A governmental unit
is entitled to receive notice of a claim against it under this chapter not
later than six months after the day that the incident giving rise to the claim
occurred. . . .

 

(b) A city's charter and
ordinance provisions requiring notice within a charter period permitted by law
are ratified and approved.

 

(c) The notice
requirements provided or ratified and approved by Subsections (a) and (b) do
not apply if the governmental unit has actual notice that death has occurred,
that the claimant has received some injury, or that the claimant's property has
been damaged.[8]

 

The City=s charter provides that

[t]he City of Denton
shall never be liable for death or personal injury of a person or for property
damages of any kind unless within ninety (90) days after the occurrence . . . a
notice in writing by or on behalf of the person injured or claiming damages . .
. is delivered  to the City Manager.[9]

 








Thus, the claimant must give the City written notice of the occurrence
within ninety days unless the City has Aactual
notice.@[10]  The purposes of the notice provisions of the
Texas Tort Claims Act are Ato
enable governmental units to gather information necessary to guard against
unfounded  claims, settle claims, and
prepare for trial.@[11]








In Cathey v. Booth, the Texas Supreme
Court construed section 101.101=s Aactual
notice@
requirement to require knowledge of 1) a death, injury, or property damage, 2)
the government unit=s alleged fault in producing or
contributing to the death, and 3) the identity of the parties involved.[12]  Because Texas appellate courts had applied
different standards to determine if the second element, knowledge of the
government unit=s alleged fault, was satisfied,
the court clarified the element in Texas Department of Criminal Justice v.
Simons.[13]  In that case, the court held that Aactual
notice under section 101.101(c) requires that a governmental unit have knowledge
of the information it is entitled to be given under section 101.101(a) and a
subjective awareness that its fault produced or contributed to the claimed
injury.@[14]  Further, 

[i]t is not enough that a
governmental unit should have investigated an incident as a prudent person
would have, or that it did investigate, perhaps as part of routine safety
procedures, or that it should have known from the investigation it conducted that
it might be at fault.  If a governmental
unit is not subjectively aware of its fault, it does not have the same
incentive to gather information that the statute is designed to provide, even
when it would not be unreasonable to believe that the governmental unit was at
fault.[15]

 

The court went on to provide that Aactual
notice is a fact question when the evidence is disputed.  In many instances, however, actual notice can
be determined as a matter of law.  There
will, of course, be times when subjective awareness must be proved, if at all,
by circumstantial evidence.@[16]  Also, the court held that the governmental
unit was not required to know that the claimant had actually made an allegation
of fault.[17]













In this court=s Texas
Department of Transportation v. Blevins case, evidence showed that Blevins=s
propane truck struck the side of a bridge, causing the truck to overturn and
killing him.[18]  The police report from the accident indicated
that driver inattention had caused the accident.[19]  A Texas Department of Transportation (TxDOT)
employee called Jess Wood to the scene to investigate the accident.[20]  Wood=s job
description required him to be present at accidents where hazardous chemicals
had been spilled and to investigate possible safety and liability concerns.[21]  Wood determined that no safety risk existed
and never reported the case to any supervisors, which TxDOT procedures required
in a case in which potential for liability existed.[22]  We held that TxDOT did not have actual notice
of its possible culpability, stating our intention to avoid a holding
indicating that anytime a TxDOT employee went to the scene of an accident,
actual notice would be imputed to the State.[23]  On the same day it decided Simons, the
Texas Supreme Court expressly agreed with our holding in Blevins that
TxDOT's knowledge of the accident and presence of employees at the scene did
not provide TxDOT with actual notice of Blevins=s claim.[24]  

We addressed the actual notice issue again and
reached a similar result in Sipes v. City of Grapevine.[25]  One of the Sipes appellants, injured
in a car accident allegedly because construction objects obstructed the driver=s view,
claimed that the City of Grapevine received actual notice of a claim when the
City=s police
officers investigated the accident and through the police reports.[26]  The police report indicated the time and
place of the accident and described the accident, labeling the road conditions
as Aobstructed
view construction zone.@[27]  We held that the evidence was insufficient to
constitute actual notice because there was no evidence that the City had
subjective awareness that its fault contributed to the appellant=s
injuries.[28]








In the case presently before us, Burson stated in
his deposition that he compiled a preliminary report of the accident and
provided it to his supervisor.  He did
not forward a copy to the legal department. 
He stated that there was no difference in how a case is handled if it
involves potential liability on the part of the City as opposed to one that
does not, and that he forwards an accident report to supervisory personnel in
both situations involving potential liability and those that do not.  Thus, even had he felt that the City might
potentially be liable, he would not have conducted himself differently or told
anyone else about the accident.  He
stated that if someone had suggested liability on the City=s part,
he would have informed his supervisor that someone had made such a
suggestion.  








The accident report indicated that it was
sleeting and wet at the time of the accident. 
The report stated that Eva=s van Adrove
off the right side of the pavement, failed to brake straight ahead, >over-corrected= to the
left, broke traction, crossed left of center, and struck [the other car].@  It also indicated that possible Afactors
and conditions@ of the accident were Afail[ure]
to drive in a single lane,@ @faulty,
evasive action,@ A[driving]
left of center,@ and Aimpaired
visibility.@ 
Burson=s investigative supplement to
the report indicated that Eva=s van
failed to stay on the roadway and dropped its right tires into the drop-off,
and Eva overrcorrected the van.  The
supplement also noted that the inclement weather may have contributed to the
accident.

Burson indicated that an approximately six-inch
drop-off existed south of the area of impact and that he knew of its existence
before the accident occurred.  He told
his supervisor that, in his opinion, Eva=s van=s right
tires dropped off the edge of the pavement and over the drop-off and that she
had overcorrected in trying to get back on the roadway, causing a loss of
directional control.  However, he noted
that although he believed the van had been in the drop-off, he was unable to
verify this fact.  He also recommended to
his supervisor that the drop-off was a hazard on the edge of the roadway and
that they should consider doing something about it.

When asked during his deposition whether he
believed that the drop-off had something to do with causing this accident to
occur, he said that it did not.  He
asserted that the driver Abroke traction@ on the
overcorrection.  When asked if the
accident would not have occurred but for the drop-off, Burson responded, 

I don=t know that. . . . I=ve seen accidents of
overcorrection that have occurred with people that have not fallen off in
ditches, that have not hit curbs.  They
have just gotten their wheels off the edge of the roadway, and the sound . . .
. cause[s] the driver to panic and lose directional control in an overcorrection.


 








He admitted that it was possible that the
accident might not have happened if the drop-off had not been there.  But he also stated that the drop-off could
never cause a wreck if a vehicle did not leave the roadway and that even if a
vehicle did leave the paved portion of the road, it would be possible to go
straight without encountering an oncoming vehicle.  He stated that the drop-off was not a hazard
to people that drove on the roadway and that @[o]vercorrection
is not uncommon in traffic accidents.@ 

When asked about having returned to the scene of
the accident and the wrecking yard in the days following the accident, Burson
stated that he did so to view the vehicles in the daylight and that in all accidents
he tries to determine how many causative factors may have contributed to the
accident.  He also stated that the reason
the City obtained Eva=s medical reports from the
hospital in 2002 was to rule out the possibility that she was driving impaired.

A
resident living near the scene of the accident had, before the accident
occurred, informed the mayor about the drop-off, indicating to the mayor that
it was dangerous.  However, neither this
fact nor the fact that Burson was aware of the drop-off before the accident
shows that Burson or the City had actual notice of its potential liability in
the subsequent accident itself. 

 








ASubjective@ is defined as A[b]ased on an individual=s perceptions, feelings,
or intentions as opposed to externally verifiable phenomena.@[29]  Burson stated that although he knew about the
drop-off and in his opinion the right wheels of the car had been in the
drop-off, no one at the scene of the accident, nor anyone in the process of
conducting the investigation, ever suggested that the City was at fault for
this accident.  He stated that he was not
aware that it was anyone=s belief that the City
was to blame for the accident, and that he was surprised to later learn
otherwise Abecause in [his] opinion
the City didn=t have any liability in
the accident. . . . That wasn=t the reason the accident occurred.@

                                                    

Appellants contend the evidence is sufficient to
raise an issue of fact on the City=s actual
notice of its alleged fault. The City contends that the evidence is not
sufficient to do so.  








We hold that as a matter of law, the City did not
have actual notice that its fault produced or contributed to the accident.  Regardless of whether Burson should have
reached a different conclusion, the subjective knowledge standard is not
met.  No other evidence goes to the issue
of the City=s actual notice.  Lack of actual notice is proper grounds for
summary judgment.[30]  We overrule Appellants= sixth
issue, and based on the applicable standard of review,[31]
we affirm the trial court=s judgment.

 

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, HOLMAN and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED: March 2, 2006

 

 

 

                                                    











[1]See Tex. R. App. P. 47.4.





[2]The City subsequently smoothed the edges of Mayhill
Road on February 12, 2002.





[3]See Tex. Civ. Prac. & Rem. Code Ann. '' 101.022, .101 (Vernon Supp. 2005).





[4]Appellants initially brought forward eight issues, but
they withdrew issues three, four, five, seven, and eight in their reply brief.





[5]See Tex. Civ. Prac. & Rem. Code Ann. ' 101.101(c).





[6]See Harding v. Kaufman County, 119 S.W.3d 428, 431-32 (Tex. App.CTyler
2003, no pet.); State v. Kreider, 44 S.W.3d 258, 261, 266 (Tex.
App.CFort Worth 2001, pet. denied); Rath v. State,
788 S.W.2d 48, 51 (Tex. App.CCorpus Christi 1990, writ denied); see also
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284‑85
(Tex. 1994); Hall v. Stephenson, 919 S.W.2d 454, 466‑67 (Tex. App.CFort
Worth 1996, writ denied).





[7]See Tex. Civ. Prac. & Rem. Code Ann. ' 101.101.





[8]Id.





[9]Denton, Tex., Code of
Ordinances, art. 1, ' 1.06 (1999).





[10]Id.; Tex. Civ. Prac. & Rem. Code Ann. ' 101.101(b), (c).





[11]Cathey v. Booth,
900 S.W.2d 339, 341 (Tex. 1995) (per curiam); Benavides v. Dallas‑Fort
Worth Int=l Airport Bd., 946
S.W.2d 576, 578 (Tex. App.CFort Worth 1997, no writ).





[12]Cathey, 900
S.W.2d at 341.





[13]Tex. Dep=t of Crim. Justice v. Simons, 140 S.W.3d 338, 339, 345 (Tex. 2004).





[14]Id. at 348
(emphasis added).





[15]Id at 347-48.





[16]Id. at 348
(citations omitted).





[17]Id. at 347.





[18]Tex. Dep=t of Transp. v. Blevins, 101 S.W.3d 170, 173 (Tex. App.CFort
Worth 2003), appeal dismissed, cause remanded, Blevins v. Tex. Dep=t
of Transp., 140 S.W.3d 337 (Tex.
2004).





[19]Id. 





[20]Id.





[21]Id.





[22]Id.





[23]Id. at
174.





[24]Blevins, 140
S.W.3d at 337 (however, because the petitioners alleged that there was other
evidence of actual notice, the Texas Supreme Court dismissed the appeal and
granted the petition for review so that the parties could address the issue
further in the trial court).





[25]See Sipes v. City of Grapevine, 146 S.W.3d 273, 284 (Tex. App.CFort
Worth 2004, pet. granted).





[26]Id.





[27]Id. 





[28]Id. 





[29]Black=s Law Dictionary 1465 (8th ed. 2004).





[30]See, e.g., Sipes, 146 S.W.3d at 284.





[31]Tex. R. Civ. P. 166a(c); Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005); Sw. Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979); Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).