ORTEGREN V. DENTON

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-177-CV

ROBERT ORTEGREN AND APPELLANTS

EVA MARIE HENNICKE, 

INDIVIDUALLY AND AS NEXT

FRIENDS OF ARIANA N. ORTEGREN,

A MINOR CHILD, AND ON BEHALF 

OF THE STATUTORY BENEFICIARIES 

OF ROBERT T. ORTEGREN, DECEASED

V.

THE CITY OF DENTON APPELLEE

------------

FROM THE 211
TH
  DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellants Robert Ortegren and Eva Marie Hennicke, individually and as next friends of Ariana N. Ortegren, a minor child, and on behalf of the statutory beneficiaries of Robert T. Ortegren, deceased, brought a personal injury and wrongful death and survival action against Appellee, the City of Denton.  Because we hold that the trial court did not err in granting the City’s motion for summary judgment regarding Appellants’ notice of claim, we affirm the trial court’s judgment. 

On November 27, 2001, Appellant Eva Hennicke was driving a van on Mayhill Road, an old county road annexed by the City.  After her right tires allegedly left the paved portion of the road to the right, Eva veered left into an oncoming lane, resulting in an accident.  Eva and Ariana Ortegren, Eva and Robert Ortegren’s daughter, received significant injuries.  
Robert T. Ortegren, their son, died. 

Officer William Burson, a Denton police officer serving as an accident investigator and reconstructionist, was dispatched to the scene within minutes of the accident to investigate it.  The same night, Burson went to the hospital where the patients were taken and spoke with Ariana and Robert (the father) about the accident.  Ariana told him that the van went off the road, and when Eva tried to steer back on the road, she lost control of the van.  The following day, he went to the wrecking yard to photograph and inspect the vehicles, and he found freshly scraped metal exposed on the undercarriage of the van.  Two days after the accident, Burson returned to the scene to take additional photographs of marks on the pavement as well as an approximately six inch drop-off to the right of the paved roadway.  Burson gave his supervisor a copy of his reports.  He told his supervisor about the drop-off and stated that he believed that Eva’s van’s tires had dropped off of the edge of the road and that she overcorrected in trying to get back on the road, causing loss of directional control.  Burson also told his supervisor that he considered the drop-off a hazard and recommended to him that it be repaired because it could potentially cause some wrecks.
(footnote: 2)  Burson allegedly did not believe that the City was liable so he did not make the City’s legal department or risk manager aware of a potential claim.

In its pleadings, the City alleged that Appellants hired an attorney and an accident reconstruction expert within three weeks of the accident.  However, the City did not receive written notice of Appellants’ claim until May 9 or 10, 2002, more than five months after the accident.  
The City’s charter required Appellants to notify the City of their claim within ninety days of the accident.  Thus, Appellants notified the City of their claim too late.

Appellants sued the City pursuant to provisions in the Texas Tort Claims Act,
(footnote: 3)  alleging that the City was liable for the accident by failing to adequately maintain the area alongside the road.  The City filed a motion for summary judgment regarding the notice of claim on both traditional and no-evidence grounds.  The trial court granted the motion but did not state on which basis it granted the motion.  Appellants moved for a new trial, but their motion was denied by operation of law.  Appellants filed a timely notice of appeal.

In three issues on appeal,
(footnote: 4) Appellants argue that 
1) the City’s no-evidence motion for summary judgment does not specifically challenge or identify any particular element of Appellants’ cause of action for which the City claims there is no evidence to support, 2) 
the City’s no-evidence motion for summary judgment asserts an affirmative defense (lack of written and actual notice) that the City has the burden of proof on, and 3) the trial court erred in granting the City’s  motion for summary judgment regarding the notice of claim 
because the summary judgment evidence raised an issue of fact about the City’s actual knowledge under section 101.101(c) of the Texas Tort Claims Act.
(footnote: 5)
 As a preliminary matter, we address Appellants’ argument that because their case allegedly involves a special defect claim, they are excused from the notice requirements of the statute.  We reject this contention, and Appellants do not provide authority for their argument.
(footnote: 6)
 In their discussions of the first two issues, Appellants and the City dispute whether 
the City’s no-evidence motion for summary judgment specifically identifies any particular element that the City claims there is no evidence of and whether
 
lack of actual notice can properly be asserted in a no-evidence motion
.  
However, we do not reach these issues because we hold that the trial court could have properly granted the motion on traditional grounds that the City lacked actual notice as a matter of law.  

Although Appellants claim in their sixth issue that they raised a genuine issue of material fact as to the City’s actual notice of its alleged fault, exempting them from the notice requirements of the Texas Tort Claims Act—Section 101.101 of the Texas Civil Practice and Remedies Code—we disagree.
(footnote: 7) 

The notice provision of the Texas Tort Claims Act provides as follows:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. . . .

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.
(footnote: 8)

The City’s charter provides that

[t]he City of Denton shall never be liable for death or personal injury of a person or for property damages of any kind unless within ninety (90) days after the occurrence . . . a notice in writing by or on behalf of the person injured or claiming damages . . . is delivered  to the City Manager.
(footnote: 9)

Thus, the claimant must give the City written notice of the occurrence within ninety days unless the City has “actual notice.”
(footnote: 10)  The purposes of the notice provisions of the Texas Tort Claims Act are “to enable governmental units to gather information necessary to guard against unfounded  claims, settle claims, and prepare for trial.”
(footnote: 11)
 In 
Cathey v. Booth
, the Texas Supreme Court construed section 101.101’s “actual notice” requirement to require knowledge of 1) a death, injury, or property damage, 2) the government unit’s alleged fault in producing or contributing to the death, and 3) the identity of the parties involved.
(footnote: 12)  Because Texas appellate courts had applied different standards to determine if the second element, knowledge of the government unit’s alleged fault, was satisfied, the court clarified the element in 
Texas Department of Criminal Justice v. Simons.
(footnote: 13)  In that case, the court held that “actual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and 
a subjective awareness 
that its fault produced or contributed to the claimed injury.”
(footnote: 14)  Further, 

[i]t is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might be at fault.  If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.
(footnote: 15)

The court went on to provide that “actual notice is a fact question when the evidence is disputed.  In many instances, however, actual notice can be determined as a matter of law.  There will, of course, be times when subjective awareness must be proved, if at all, by circumstantial evidence.”
(footnote: 16)  Also, the court held that the governmental unit was not required to know that the claimant had actually made an allegation of fault.
(footnote: 17)
 In this court’s 
Texas Department of Transportation v. Blevins
 case, evidence showed that Blevins’s propane truck 
struck the side of a bridge, causing the truck to overturn and killing him.
(footnote: 18)  The police report from the accident indicated that driver inattention had caused the accident.
(footnote: 19)  A Texas Department of Transportation (TxDOT) employee called Jess Wood to the scene to investigate the accident.
(footnote: 20)  Wood’s job description required him to be present at accidents where hazardous chemicals had been spilled and to investigate possible safety and liability concerns.
(footnote: 21)  Wood determined that no safety risk existed and never reported the case to any supervisors, which TxDOT procedures required in a case in which potential for liability existed.
(footnote: 22)  We held that TxDOT did not have actual notice of its possible culpability, stating our intention to avoid a holding indicating that anytime a TxDOT employee went to the scene of an accident, actual notice would be imputed to the State.
(footnote: 23)  On the same day it decided 
Simons, 
the Texas Supreme Court expressly agreed with our holding in 
Blevins 
that TxDOT's knowledge of the accident and presence of employees at the scene did not provide TxDOT with actual notice of Blevins’s claim.
(footnote: 24)  

We addressed the actual notice issue again and reached a similar result in 
Sipes v. City of Grapevine
.
(footnote: 25)  One of the 
Sipes
 appellants, injured in a car accident allegedly because construction objects obstructed the driver’s view, claimed that the City of Grapevine received actual notice of a claim when the City’s police officers investigated the accident and through the police reports.
(footnote: 26)  The police report indicated the time and place of the accident and described the accident, labeling the road conditions as “obstructed view construction zone.”
(footnote: 27)  We held that the evidence was insufficient to constitute actual notice because there was no evidence that the City had subjective awareness that its fault contributed to the appellant’s injuries.
(footnote: 28)
 In the case presently before us, Burson stated in his deposition that he compiled a preliminary report of the accident and provided it to his supervisor.  He did not forward a copy to the legal department.  He stated that there was no difference in how a case is handled if it involves potential liability on the part of the City as opposed to one that does not, and that he forwards an accident report to supervisory personnel in both situations involving potential liability and those that do not.  Thus, even had he felt that the City might potentially be liable, he would not have conducted himself differently or told anyone else about the accident.  He stated that if someone had suggested liability on the City’s part, he would have informed his supervisor that someone had made such a suggestion.  

The accident report 
indicated that it was sleeting and wet at the time of the accident.  The report stated that Eva’s van “drove off the right side of the pavement, failed to brake straight ahead, ‘over-corrected’ to the left, broke traction, crossed left of center, and struck [the other car].”  It also indicated that possible “factors and conditions” of the accident were “fail[ure] to drive in a single lane,” ”faulty, evasive action,” “[driving] left of center,” and “impaired visibility.”  Burson’s investigative supplement to the report indicated that Eva’s van failed to stay on the roadway and dropped its right tires into the drop-off, and Eva overrcorrected the van.  The supplement also noted that the inclement weather may have contributed to the accident.

Burson indicated that an approximately six-inch drop-off existed south of the area of impact and that he knew of its existence before the accident occurred.  He told his supervisor that, in his opinion, Eva’s van’s right tires dropped off the edge of the pavement and over the drop-off and that she had overcorrected in trying to get back on the roadway, causing a loss of directional control.  However, he noted that although he believed the van had been in the drop-off, he was unable to verify this fact.  He also recommended to his supervisor that the drop-off was a hazard on the edge of the roadway and that they should consider doing something about it.

When asked during his deposition whether he believed that the drop-off had something to do with causing this accident to occur, he said that it did not.  He asserted that the driver “broke traction” on the overcorrection.  When asked if the accident would not have occurred but for the drop-off, Burson responded, 

I don’t know that. . . . I’ve seen accidents of overcorrection that have occurred with people that have not fallen off in ditches, that have not hit curbs.  They have just gotten their wheels off the edge of the roadway, and the sound . . . . cause[s] the driver to panic and lose directional control in an overcorrection. 

He admitted that it was possible that the accident might not have happened if the drop-off had not been there
.
  But he also stated that the drop-off could never cause a wreck if a vehicle did not leave the roadway and that even if a vehicle did leave the paved portion of the road, it would be possible to go straight without encountering an oncoming vehicle.  He stated that the drop-off was not a hazard to people that drove on the roadway and that ”[o]vercorrection is not uncommon in traffic accidents.” 

When asked about having returned to the scene of the accident and the wrecking yard in the days following the accident, Burson stated that he did so to view the vehicles in the daylight and that in all accidents he tries to determine how many causative factors may have contributed to the accident.  He also stated that the reason the City obtained 
Eva’s medical reports from the hospital in 2002 was 
to rule out the possibility that she was driving impaired.

A resident living near the scene of the accident had, before the accident occurred, informed the mayor about the drop-off, indicating to the mayor that it was dangerous.  However, neither this fact nor the fact that Burson was aware of the drop-off before the accident shows that Burson or the City had actual notice of its potential liability in the 
subsequent 
accident itself. 

“Subjective” is defined as “[b]ased on an individual’s perceptions, feelings, or intentions as opposed to externally verifiable phenomena.”
(footnote: 29)  Burson stated that although he knew about the drop-off and in his opinion the right wheels of the car had been in the drop-off, no one at the scene of the accident, nor anyone in the process of conducting the investigation, ever suggested that the City was at fault for this accident.  He stated that he was not aware that it was anyone’s belief that the City was to blame for the accident, and that he was surprised to later learn otherwise “because in [his] opinion the City didn’t have any liability in the accident. . . . That wasn’t the reason the accident occurred.”

Appellants contend the evidence is sufficient to raise an issue of fact on the City’s actual notice of its alleged fault. The City contends that the evidence is not sufficient to do so.  

We hold that as a matter of law, the City did not have actual notice that its fault produced or contributed to the accident.  Regardless of whether Burson should have reached a different conclusion, the subjective knowledge standard is not met.  No other evidence goes to the issue of the City’s actual notice.  Lack of actual notice is proper grounds for summary judgment.
(footnote: 30)  We overrule Appellants’ sixth issue, and based on the applicable standard of review,
(footnote: 31) we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED: March 2, 2006

FOOTNOTES
1:
See 
T
ex. R. App. P
. 47.4.

2:
The City subsequently smoothed the edges of Mayhill Road on February 12, 2002.

3:
See 
Tex. Civ. Prac. & Rem. Code Ann
. §§ 101.022, .101 (Vernon Supp. 2005).

4:
Appellants initially brought forward eight issues, but they withdrew issues three, four, five, seven, and eight in their reply brief.

5:
See 
Tex. Civ. Prac. & Rem. Code Ann
.
 
§ 101.101(c).

6:
See Harding v. Kaufman County
, 119 S.W.3d 428, 431-32 (Tex. App.—Tyler 2003, no pet.); 
State v. Kreider, 
44 S.W.3d 258, 261, 266
 
(Tex. App.—Fort Worth 2001, pet. denied); 
Rath v. State
, 788 S.W.2d 48, 51 (Tex. App.—Corpus Christi 1990, writ denied);
 
see also Fredonia State Bank v. Gen. Am. Life Ins. Co., 
881 S.W.2d 279, 284-85 (Tex. 1994);
 Hall v. Stephenson,
 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied).

7:
See 
Tex. Civ. Prac. & Rem. Code Ann
. § 101.101.

8:
Id.

9:
Denton, Tex., Code of Ordinances, 
art. 1,
 
§ 1.06 (1999).

10:
Id.; 
Tex. Civ. Prac. & Rem. Code Ann
. § 101.101(b), (c).

11:
Cathey v. Booth
, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam)
; 
Benavides v. Dallas-Fort Worth Int’l Airport Bd., 
946 S.W.2d 576, 578 (Tex. App.—Fort Worth 1997, no writ).

12:
Cathey, 
900 S.W.2d at 341.

13:
Tex. Dep’t of Crim. Justice v. Simons, 
140 S.W.3d 338, 339, 345 (Tex. 2004).

14:
Id. 
at 348 (emphasis added).

15:
Id 
at 347-48
.

16:
Id. 
at 348 (citations omitted).

17:
Id. 
at 347.

18:
Tex. Dep’t of Transp. v. Blevins
, 101 S.W.3d 170, 173 (Tex. App.—Fort Worth 2003), 
appeal dismissed, cause remanded, Blevins v. Tex. Dep’t of Transp.,
 140 S.W.3d 337 (Tex. 2004).

19:
Id. 

20:
Id.

21:
Id.

22:
Id.

23:
Id. 
at 174.

24:
Blevins
, 140 S.W.3d at 337 (however, because the petitioners alleged that there was other evidence of actual notice, the Texas Supreme Court dismissed the appeal and granted the petition for review so that the parties could address the issue further in the trial court).

25:
See Sipes v. City of Grapevine
, 146 S.W.3d 273, 284 (Tex. App.—Fort Worth 2004, pet. granted).

26:
Id.

27:
Id. 

28:
Id. 

29:
Black’s Law Dictionary
 1465 (8th
 ed. 2004).

30:
See, e.g., Sipes, 
146 S.W.3d at 284.

31:
Tex. R. Civ. P.
 166a(c); 
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979);
 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965)
.