THE TEXAS DEPARTMENT
OF TRANSPORTATION,
Appellant,

v.

Tamara PATE, Derl Anderson, Celia Anderson, and Kyle Pate, Individually and as Representative of the Estate of Casey Pate, Deceased, Appellees.

No. 06–04–00070–CV.

Court of Appeals of Texas,
Texarkana.

Submitted June 16, 2005.

Decided Aug. 16, 2005.

Rehearing Overruled Sept. 13, 2005.

Susan Desmarais Bonnen, Asst. Atty. Gen., Transportation Division, Austin, for Appellant.

Gregory D. Smith (lead counsel), Ramey & Flock, PC, Tyler, Jeffery B. Badders, Badders Law Firm, PC, Nacogdoches, Kenneth W. Burch, Gray, Burch & Haddad, Houston, Richard R. Morrisson, III, Kemah, Forrest G. Braselton, Nacogdoches, Seth Cortigene, Cortigene Law Firm, La Porte, for Appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In the wake of the October 2000 collision that killed three young people—Earl Haley, Heather Anderson, and Casey Pate—at the intersection of State Highway 21 and Farm–to–Market Road 95 (FM95) in Nacogdoches County, the evidence suggested the pickup truck driven by Haley and occupied by his two companions either stopped or slowed to a crawl at a stop sign before proceeding slowly onto the highway and into the path of a tractor-trailer truck traveling just above the fifty-five-mile-per-hour speed limit. Evidence also showed that Haley's view of oncoming traffic on Highway 21 was at least partially obscured by vegetation that had grown up in the state highway right-of-way after the stop sign had been installed.

The survivors sued the Texas Department of Transportation (the Department) under a premises defect theory, alleging that the Department did not keep the trees at the intersection trimmed back enough to provide sufficient visibility so Haley, as he approached Highway 21 on FM95, could see and avoid oncoming traffic. The jury agreed, finding the Department sixty percent responsible and Haley forty percent responsible. The evidence shows that trees and underbrush had grown up in the sight lines from the stop bar, which was beside the stop sign thirty feet from the intersection, and that the truck would not have become visible to Haley until his vehicle was entering or was very near the intersection. The Department raises several issues on appeal.

We affirm the judgment because we hold that (A) sovereign immunity does not bar recovery; (B) the evidence is sufficient on the three challenged components of the jury's finding that the Department was negligent, (1) unreasonable risk of harm,

(2) failure to warn of the condition, and (3) proximate cause; and (C) admitting evidence of subsequent remedial measures was harmless error.

*(A) Sovereign Immunity Does Not Bar Recovery*

The Department argues that it enjoys sovereign immunity because the Texas Tort Claims Act does not apply to this situation. We disagree.

■■■ Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision waiving its immunity. *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002); *Dallas Co. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998). The Texas Tort Claims Act creates a limited waiver of this immunity in three general areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 611 (Tex.2000); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005). The Act does not waive immunity for discretionary decisions, such as whether and what type of safety features to provide or—as the Department asserts is applicable to this case—where to locate a warning sign. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 2005); *State v. San Miguel,* 2 S.W.3d 249, 251 (Tex.1999).

The parties' views of this case diverge on this dividing point: whether the lawsuit is about the Department's decision on where to set the stop bar—a discretionary [1] act involving safety features—or the Department's duty to maintain the right-of-way so growing vegetation did not create safety issues—a condition or use of the property.

The plaintiffs acknowledged at trial and on appeal that the Department had the authority to set the stop bar's location and that the Department's decision on that point was discretionary. The Department's argument assumes that the Department had the discretion to place the stop bar where it did. The Department argues that it can design its roads however it chooses and that it has no duty to "provide a clear line of sight distance from the stop line."

But we believe the Department misconstrues the lawsuit's claims. Plaintiffs argued that the Department has a statutory duty of maintenance and upkeep, including all activities necessary to "preserve a highway as it was originally designed and constructed." *See Villarreal v. State,* 810 S.W.2d 419, 421 (Tex.App.-Dallas 1991, writ denied); *Burnett v. Tex. Highway Dep't,* 694 S.W.2d 210, 212 (Tex.App.-Eastland 1985, writ ref'd n.r.e.). The case was submitted to the jury, not as a defect in the design of the roadway or in the location of the stop sign, but as a premises defect allegedly arising from the Department's failure to properly maintain its right-of-way.

The Department has directed us to no authority that would make the two concepts equivalent. It argues that maintenance is not required by law and that maintenance is therefore discretionary. Yet, there are cases that require maintenance of roadways.[2] The Department at-

---

**1.** *But see Sipes v. City of Grapevine,* 146 S.W.3d 273, 285 (Tex.App.-Fort Worth 2004, no pet.) (holding there was some evidence that city had negligently implemented discretionary act involving stop light, and remanding for trial).

**2.** *See Jezek v. City of Midland,* 605 S.W.2d 544, 545 (Tex.1980); *Tex. Dep't of Transp. v.*

tempts to make this case fit into a safety feature design situation such as those for lights and signs, which are treated as part of design and thus discretionary and not actionable. That attempt to recast the lawsuit does not accurately comport with the way the case was submitted.

More on point, the Department next argues that it had no duty "with respect to the condition of the trees, underbrush and obstruction of view on the State's right-of-way." To support that argument, the Department directs our attention to *Jezek,* 605 S.W.2d at 546. *Jezek* involved a motorist whose car was hit after he pulled out onto a roadway intersection to look for oncoming cars because he could not see past heavy vegetation. In that case, the city had actual knowledge of the hazardous condition, including the knowledge that there was a history of vehicle accidents at that intersection. The court held that "where a city knowingly maintains an intersection right-of-way in a manner which dangerously obstructs the vision of motorists, ... they are under a duty to warn of the danger or ... make safe the defective condition." *Id.* at 548; *but see Sipes v. Tex. Dep't of Transp.,* 949 S.W.2d 516, 521 (Tex.App.-Texarkana 1997, pet. denied) (no evidence of Department's knowledge of obscured view, thus no liability for vegetation blocking view of motorist). The implicit

jury finding here that the Department knew of the overgrown vegetation blocking motorists' views is not contested on appeal.

The Department focuses on a paragraph of the *Jezek* opinion that acknowledges the problem of imposing this type of duty on counties and states that "counties in Texas have no proprietary functions and thus would have no duty in this area." *Jezek,* 605 S.W.2d at 547. But the Department is not a county; and, unlike a county, the Department is given "exclusive and direct control of all improvement of the state highway system," which system is to be provided "efficient maintenance." *See* TEX. TRANSP. CODE ANN. §§ 224.031–.032 (Vernon 1999).[3]

The Department's argument that keeping its designed sight lines clear is purely a discretionary duty, and that its immunity is therefore not waived by the Texas Tort Claims Act, is therefore not supportable. *See Hamric,* 718 S.W.2d at 919–20 (efficient maintenance includes trimming vegetation on right-of-way so it will not impair motorists' views as they approach intersections); *see also Olson,* 980 S.W.2d at 896 (untrimmed shrubbery invading right-of-way and partially obscuring line of sight from stop position). We overrule this point of error.

*Olson,* 980 S.W.2d 890, 895 (Tex.App.-Fort Worth 1998, no pet.) (allowing vegetation to obscure sight lines at intersection was assumed actionable; immunity not broached); *Hamric v. Kansas City S. Ry. Co.,* 718 S.W.2d 916, 919 (Tex.App.-Beaumont 1986, writ ref'd n.r.e.) (efficient maintenance of state highway rights-of-way includes trimming vegetation to avoid impairing view of motorists approaching intersection).

**3.** Before 1995, Article 6674q–4 of the Texas Revised Civil Statutes explicitly required the Department to provide efficient maintenance of the state highway system. In 1995, when that statute, with many others, was codified

into the Texas Transportation Code, the provisions of Article 6674q–4 were divided into two sections of the new Code, Section 224.031, which gave the Department "exclusive and direct control of all improvements of the state highway system," and Section 224.032, which mandated that the State Highway Commission provide for the "efficient maintenance of the system." TEX. TRANSP. CODE ANN. § § 224.031(a), 224.032(a)(1). That codification was acknowledged to be a nonsubstantive revision of the statutes relating to transportation. *See* TEX. TRANSP. CODE ANN., Revisor's Report, 1995 (found at 1 TEX. TRANSP. CODE ANN. pp. XV–XVI (Vernon 1999)).

*(B) The Evidence Is Sufficient To Support the Three Challenged Jury Findings*

The Department next complains that the evidence does not support the jury's verdict. The jury found the Department negligent in response to the following question. It reads (in part) as follows:

> Did the negligence, if any, of [the Department] *proximately cause* the collision in question?
>
> . . . .
>
> "Negligence" with regard to the Texas Department of Transportation means that, with respect to the condition of trees, underbrush and obstruction of view on the State's right-of-way of oncoming traffic at the site of the accident:
>
> a. There existed a condition that posed an *unreasonable risk of harm* for the ordinary users of the roadway in question;
>
> b. The Texas Department of Transportation had actual knowledge of the dangerous condition, if any, and
>
> c. The Texas Department of Transportation, within a reasonable period of time after it acquired actual knowledge of such condition, *failed to warn* of the condition and failed to make such condition safe.

(Emphasis added.) The jury found the Department and Haley negligent, and assessed negligence at sixty percent to the Department and forty percent to Haley. The Department contends there is legally or factually insufficient evidence to support the verdict, as to these components: (1) unreasonable risk of harm, (2) failure to warn, and (3) proximate cause.

■ In determining a no-evidence issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001);

*Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez,* 937 S.W.2d at 450. When considering a factual sufficiency challenge, we consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

*(1) The Finding of Unreasonable Risk of Harm Is Supported by Sufficient Evidence*

■ The Department first argues the Plaintiffs did not provide evidence of an unreasonable risk of harm. In setting up its argument, it focuses on its own expert's testimony, which was essentially that, if the driver had gone past the stop bar to the very edge of the intersection and then stopped, he would have been able to see a sufficient distance down the road. The Plaintiffs' expert relied on sight line minimums as set out by the A.A.S.H.T.O. design information, which showed the distance that was necessary for safety, and in extensive testimony, he explained the necessity for the sight lines to be of that length. Briefly, the sight lines are designed for two purposes: to allow the stopped driver to assess whether he or she could enter the roadway safely, and to allow the oncoming traffic to see the entering traffic in time to stop, if necessary. By allowing the trees to grow until they blocked the sight lines, the Department frustrated both of these purposes.

Further, it is clear that statutes require

a driver to stop at the stop sign/stop bar.[4] Despite the Department's intimations, there is no statute requiring a second stop beyond that point or requiring that drivers "creep through" an intersection, save only for the general duty to drive safely and to yield to oncoming traffic.

In summary, the Plaintiffs provided evidence that the sight line, because of the growth of the vegetation, provided less than one-third of the recommended visibility and that the visibility was so limited that drivers had insufficient reaction time, even if they obeyed the law by stopping at the stop bar and then pulling out, thinking they were clear. The Department introduced evidence that the length of the line of sight improved as a vehicle pulled closer to the road. While that is logical, it does not require a different jury finding. The evidence is legally and factually sufficient to support the jury's finding of unreasonable risk of harm.

### (2) The Finding of Failure To Warn Is Supported by Sufficient Evidence

■ The Department also argues that the evidence is insufficient to support the jury's conclusion that the Department failed to adequately warn drivers of the condition and failed to make the condition reasonably safe. The Department essentially says that, since there was a stop sign and a blinking light, that was warning. We agree that those were warnings, but they appeared to be warning of the presence of a requirement that motorists stop and that an intersecting road was ahead. There were no warnings about the specific claim in this case, which was the inability to see far enough down the intersecting

road. Further, there is evidence from which the jury could conclude Haley heeded the warnings and obeyed the state-mandated requirement to stop, at the point where the Department had decided he needed to stop.

At most, the fact that Haley could have seen further had he pulled further out and stopped again suggests his possible negligence. That is consistent with the fact that the jury allocated forty percent negligence to Haley.

There is factually and legally sufficient evidence to support the jury's finding on failure to warn.

### (3) The Finding of Proximate Cause Is Supported by Sufficient Evidence

■ The Department finally argues that the evidence does not support the jury's finding that the Department's negligence was a proximate cause of the injuries. Proximate cause may be proven by either direct or circumstantial evidence, but it cannot be based on conjecture, guess, or speculation. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995); *Loram Maint. of Way, Inc. v. Ianni,* 141 S.W.3d 722 (Tex.App.-El Paso 2004, no pet.). Proximate cause consists of two elements, cause-in-fact and foreseeability. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Doe,* 907 S.W.2d at 477. We therefore examine the record to determine whether there is legally and factually sufficient evidence to support an affirmative finding on each of these two elements.

---

4. *See* TEX. TRANSP. CODE ANN. §§ 544.008, 544.010(c) (Vernon 1999). An operator required to stop by this section shall stop before entering the crosswalk on the near side of the intersection. In the absence of a crosswalk, the operator shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

■ *Cause–in–Fact.* Cause-in-fact is established when there is evidence that the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 799 (Tex. 2004); *Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 737 (Tex.1998).

■ The Department's argument on cause-in-fact is more of a "sole proximate cause" argument than one based on proximate cause alone.[5] It suggests that, because there was nothing to show that the trees caused the accident, cause-in-fact is not supported by the evidence. This is an incorrect application of the standard to the facts. There is evidence that a jury could review to conclude the uncut trees were a substantial factor in bringing about the injury. The evidence indicates that Haley's pickup truck was moving quite slowly when it came into the line of traffic, that Haley had no time to avoid the accident, and that the driver of the tractor-trailer truck likewise had no opportunity to avoid the accident, each of which could be attributed by the fact-finder, at least in part, to the Department's failure to cut the vegetation on the right-of-way. Whether a particular act of negligence is a cause-in-fact of an injury is a particularly apt question for jury determination. *Farley v. MM Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975); *Wyatt v. Longoria,* 33 S.W.3d 26, 32 (Tex. App.-El Paso 2000, no pet.). The evidence is legally and factually sufficient to support the jury's determination on the cause-in-fact element of proximate cause.

■ *Foreseeability.* Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Read,* 990 S.W.2d at 737; *Doe,* 907 S.W.2d at 478. The foreseeability element requires only that the general danger be foreseeable, not the precise sequences of events that produced the harm. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001).

The Department's argument that the accident was not foreseeable is largely based on the fact that there was no evidence of prior accidents in that location and that, therefore, any suggestion the accident was foreseeable was nothing more than "conjecture, guess or speculation." Although lack of accident history can be considered by the jury, it is not controlling.

■ The danger of injury is foreseeable if its general character might reasonably have been anticipated. *Doe,* 907 S.W.2d at 478. The question of foreseeability, and proximate cause generally, involves a practical inquiry based on common experience applied to human conduct. *Id.; City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987). It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *Doe,* 907 S.W.2d at 478; *McClure v. Allied Stores of Tex., Inc.,* 608 S.W.2d 901, 903 (Tex.1980).

As previously set out, there was clear and uncontroverted evidence that, because of the vegetation growth, the sight line from the stop bar (where the driver is required by law to stop) was less than one

**5.** The Department's argument utilizes the "more likely than not" language as used in proximate cause medical malpractice cases as part of its argument. This language has not been used in a reported case in Texas in any other context than the specialized world of medical malpractice, and we decline the implied suggestion that it is applicable here. *See Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 400 (Tex.1993); *Welch v. McLean,* —— S.W.3d ——, No. 2–02–237–CV, 2005 WL 1293068, 2005 Tex.App. LEXIS 4231 (Tex.App.-Fort Worth June 2, 2005, no pet.).

third of the amount that is considered necessary by the national engineering standards for such a situation. The basis underlying those computations was explained by the expert witnesses and was not controverted. The Department's only argument was not that the sight line from the stop bar was adequate, but instead that the sight line should have been measured from a different point, closer to the intersection.

The evidence was legally and factually sufficient to support a finding that the result was foreseeable. We overrule the evidentiary contentions of error.

*(C) Admitting Evidence of Subsequent Remedial Measures Was Harmless Error*

 The Department finally contends the trial court committed reversible error by admitting evidence the Department had, after the accident, cut down the trees which had grown up in the right-of-way. Rule 407 of the Texas Rules of Evidence limits the admissibility of evidence of subsequent remedial measures, so that a fact-finder will not consider them as proof of negligence. *Brookshire Bros. v. Lewis*, 911 S.W.2d 791, 797 (Tex.App.-Tyler 1995, writ denied). Thus, evidence of remedial measures taken after an accident are ordinarily inadmissible, but such evidence need not be excluded if it is offered for another legitimate purpose. Tex.R. Evid. 407(a); *Hagins v. E–Z Mart Stores, Inc.*, 128 S.W.3d 383, 393 n. 4 (Tex.App.-Texarkana 2004, no pet.).

The evidence at issue consists of portions of depositions of Department employees discussing the Department's post-accident cutting of the trees and photographs depicting the terrain Haley would have had to look across to see the approaching tractor-trailer truck as the two vehicles approached the intersection just before the accident—as that terrain appeared after the trees were removed, post-accident. Plaintiffs' counsel argued, pretrial, that the Department employees had stated there was no difference in the sight line with or without the trees, and therefore sought to introduce the additional evidence to impeach those statements. After hearing the argument of counsel, the trial court indicated that it would admit the evidence for the sole purpose of impeaching the deposition testimony of Clyde Matthews, a maintenance supervisor for the Department, and also noted that Matthews could not be impeached until he had first testified. At the beginning of trial, the trial court heard argument concerning the contents of a booklet of anticipated exhibits Plaintiffs wished to distribute to each juror. At that time, the Department specifically objected to Plaintiffs' Exhibits 19, 26, and 28, which were photographs showing the site after the vegetation had been cut, copies of which photographs were included in Plaintiffs' jury booklets. Plaintiffs' Exhibits 19, 26, and 28 were admitted at that time, for the sole purpose of impeaching Matthews' testimony and in anticipation of his testimony. The Department then sought, and was granted, a *running objection to any and all evidence depicting the subsequent remedial measures.* The exhibit booklet was distributed to jurors after opening arguments.

During their case-in-chief, Plaintiffs read excerpts from Matthews' deposition into the record. After Matthews' deposition excerpts were read, various exhibits were admitted. Among those, Exhibit 26 was again admitted, this time after the Department, asked if it had any objection, affirmatively said "none." Then, Exhibit 28 was again admitted with an affirmatively stated "no objection" from the Department. At trial, Matthews never testified in person, and the only excerpts from his

deposition read into the record were tendered by Plaintiffs.

In its motion for new trial, the Department complained that the trial court had abused its discretion in admitting the evidence of subsequent remedial measures "because evidence of subsequent remedial measures was not admissible and the admission probably caused the rendition of an improper judgment." In its brief on appeal, the Department makes its arguments regarding the subsequent remedial measures in just over four pages. Most of the Department's argument asserts the Plaintiffs' purpose in trying to introduce the subsequent remedial measures into evidence was not really impeachment, but proof of negligence. In one phrase on page 31 of its brief, however, the Department cites an Alabama case for the proposition that such evidence was not admissible as impeachment "unless the ... testimony a party seeks to impeach was initiated by the defendant, and the testifying witness had some control over the subsequent repair or alteration." *Blythe v. Sears, Roebuck & Co.,* 586 So.2d 861, 864 (Ala.1991). The phrase is not commented on or urged beyond the quoted phrase, and the case is not applied to the present facts that Matthews' testimony was submitted by the Plaintiffs. At oral argument, the Department asserted that Plaintiffs improperly impeached the very testimony they tendered. Although a party can waive an issue by failing to properly brief it, *see* TEX.R.APP. P. 38.1(h); *Dallas Firefighters Ass'n v. Booth Research Group, Inc.,* 156 S.W.3d 188, 196 (Tex.App.-Dallas 2005, pet. denied), because the Department's brief touches on the issue, we will address it.

■ Evidence of subsequent remedial measures should not have been admitted to impeach Matthews, since Plaintiffs tendered his testimony. Rule 607 of the Texas Rules of Evidence permits the credibility of a witness to be attacked by any party, including the party calling the witness. TEX.R. EVID. 607; *Hughes v. State,* 4 S.W.3d 1, 5 (Tex.Crim.App.1999). But a party may not call a witness primarily for the purpose of impeaching him or her with evidence that would otherwise be inadmissible. *Montoya v. State,* 65 S.W.3d 111, 114 (Tex.App.-Amarillo 2000, no pet.); *see Armstead v. State,* 977 S.W.2d 791, 795–96 (Tex.App.-Fort Worth 1998, pet. ref'd), *citing Barley v. State,* 906 S.W.2d 27, 37 n. 11 (Tex.Crim.App.1995). But that does not end our inquiry.

■ When a party affirmatively asserts during trial that he or she has "no objection" to the admission of the complained-of evidence, any error in the admission of the evidence is waived, even in the face of a pretrial ruling. TEX.R.APP. P. 33.1; *Moraguez v. State,* 701 S.W.2d 902, 904 (Tex.Crim.App.1986); *accord Sands v. State,* 64 S.W.3d 488, 491 (Tex.App.-Texarkana 2001, no pet.).

■ Plaintiffs' Exhibits 26 and 28, both in evidence after the Department's utterance of "no objection" to them, showed the trees, their location, and the sight lines before and after the trees were cut. While those two exhibits do not explicitly demonstrate that the Department cut the trees, a logical deduction was, and the jury could have properly concluded that, the trees, on the Department right-of-way, had been removed by the Department. The photographs show the view before and after the trees were cut down after the accident. They could easily be compared to other photographs depicting the trees present at the intersection the night Haley approached the intersection. Any error in the admission of testimony is rendered harmless if the objecting party subsequently permits the same or similar evi-

dence to be introduced without objection. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728 (Tex.App.-Texarkana 1996, no pet.). Thus, the error in admitting other evidence of the subsequent remedial measures was rendered harmless. We overrule this contention of error.

We affirm the judgment.