# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00067-CV

---

**The City of Austin, Appellant**

**v.**

**Irene Quinlan, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-003598,
### THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The City of Austin appeals from the district court's order denying its plea to the jurisdiction filed in response to a suit brought by Irene Quinlan against the City and Guero's Restaurant, Inc., an Austin restaurant where Quinlan was allegedly injured. In two issues on appeal, the City argues that the district court erred in denying the plea and that Quinlan's claims against the City should be dismissed with prejudice. We will affirm in part and reverse in part the district court's order and render judgment dismissing some but not all of Quinlan's claims.

## BACKGROUND

The following summary is taken from the allegations in Quinlan's fourth amended petition and the City's amended plea to the jurisdiction, the live pleadings in the case. According to Quinlan, her "lawsuit is primarily for a premises-liability claim in connection to a

serious injury that Plaintiff Quinlan sustained while she was a patron at a restaurant owned by Defendant Guero's." Guero's "was in possession and control of the premises" located at 1412 South Congress Avenue in Austin and holds a permit to occupy the City's Right of Way (specifically, a sidewalk on South Congress Avenue) to operate a "sidewalk café" on a patio area outside the restaurant. To obtain this permit, Guero's agreed to pay the City an application fee of $100 and an annual fee of $200. Additionally, Guero's was required to maintain the premises in accordance with the terms of a "Maintenance Agreement" with the City (the Agreement).

Copies of the permit and the Agreement were attached to the parties' pleadings. In relevant part, the Agreement provides that the patio may be occupied and used by Guero's "for the sole purpose of constructing, installing, operating, maintaining and repairing a temporary sidewalk cafe for food and beverage service." "In its use and occupancy of the Premises," Guero's is to "strictly comply" with various maintenance requirements specified in the Agreement, including that any "[f]urnishings shall not extend or overhang outside of the permitted area, constitute a danger to the health or safety of a patron or the public, violate any other ordinance that governs the use of public right of way, or interfere with or obstruct the public right of way"; that no signs or banners be placed or permitted on the premises; and that no hazardous materials be placed or permitted in or about the premises.

The Agreement also provides that Guero's "shall be responsible at its sole expense for the construction, installation, operation, maintenance, repair and removal of any improvements to the Premises" and that Guero's was to "acknowledge[] that the area covered by this permit constitutes a portion of a public right-of-way and agree[] that use herein permitted shall be done in compliance with all codes, ordinances and regulations." Further, the Agreement requires Guero's "to pay all costs required to repair damage to or relocate existing Facilities,

2

which are damaged or destroyed or need to be relocated as a result of activities under this Agreement," "to pay all costs required to remove or modify any Improvements now existing or to be replaced if the City determines that the Improvements need to be removed or modified," and to "timely and properly maintain all Improvements" to the premises.

The Agreement also provides that the City "shall at all times have the right to enter the Premises to inspect, improve, maintain, alter or utilize the Premises in any manner authorized to the City." Further, "[i]f such entry requires disturbance of any items placed upon the Premises under this Agreement, the City shall not be required to repair or replace any such disturbance." For its part, Guero's is required to "avoid any damage or interference with any City installations, structures, utilities or improvements on, under, or adjacent to the Premises." Moreover, the Agreement provides that if Guero's fails to comply with its maintenance obligations, "the City may at its sole discretion terminate this Agreement as provided herein or take measures as it determines necessary to bring the Premises into compliance with the terms hereof, and the cost of any such measures shall be paid by" Guero's.

The patio, although level with the restaurant, is elevated above the street. On or about May 27, 2018, Quinlan was a patron at Guero's when she injured herself after falling "more than a foot" from the patio on the outer edge of the premises while she was exiting the restaurant. Quinlan alleges that

> The layout of the restaurant/Premises was such that a patron exits the main restaurant building and then enters a patio area, which in turn connects to the street. However, there are no railings on the patio and no warnings of the large and sudden drop from the patio to the street. Moreover, the placement by Guero's of furniture and chairs and plants on the patio further confused Plaintiff and obstructed the drop from the patio to the street.

3

Quinlan further alleges that the City "may also be liable for the claims in this lawsuit to the extent that the patio and/or surrounding area is owned and/or under the control of the City of Austin." Quinlan claims that according to the terms of the Agreement, the City "assumed contractual responsibility to both monitor and enforce violations by Guero's with regards to safety of the patio." Quinlan also claims that "[i]n light of the Agreement, the City of Austin further became obligated to ensure that the patio and the street was level so as not to pose a dangerous condition to Plaintiff and other patrons."

Quinlan alleges that the City and Guero's "were jointly in control of the subject Premises" and that both Guero's and the City "had a duty to exercise the degree of care that a reasonably careful person/party would use to avoid harm to others under circumstances similar to those described" in Quinlan's petition. Quinlan claims that both Guero's and the City breached that duty by "fail[ing] to install railings between the patio and the street," "fail[ing] to warn Plaintiff and other patrons of the danger of a sudden drop from the patio to the street, notwithstanding the fact that the patio area was essential for access to and from Guero's," "maintain[ing] tables and chairs and plants on the patio, which had the effect of obstructing the street and confusing the patron about the sharp drop immediately following the patio entrance," and "fail[ing] to make level the patio and the street."

Quinlan further alleges that the City, by virtue of the Agreement with Guero's, "was obligated to elevate the street and/or provide appropriate modifications to the patio and surrounding area to make such premises safe for patrons." Quinlan claims that by failing to do so, the City "was negligent in the implementation of policy and/or its responsibilities regarding the patio and the Agreement with Guero's." "At the very least," Quinlan continues, "the City of Austin allowed Guero's to obstruct and/or mislead Plaintiff regarding the drop from the patio and

4

the street by the placement of furniture, tables and plants on the patio." In Quinlan's view, the Agreement between the City and Guero's "precluded obstruction/confusion by Guero's of the patio and further obligated the City of Austin to monitor the patio and take enforcement action against Guero's." As an additional basis for liability, Quinlan alleges that the Agreement between the City and Guero's constituted a "joint enterprise," thereby making the City vicariously liable for Guero's conduct.

The City filed a plea to the jurisdiction, arguing that Quinlan's claims against it were barred by governmental immunity. The district court denied the City's plea without specifying the basis for the denial, and this interlocutory appeal followed.

## STANDARD OF REVIEW

"Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). Consequently, cities are generally immune from suit and liability absent a legislative waiver of that immunity. *See Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374–75 (Tex. 2006); *City of Houston v. Nicolai*, 539 S.W.3d 378, 386 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

An assertion of governmental immunity implicates the trial court's jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tarrant Regional Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 225. Therefore, when a

5

government defendant challenges jurisdiction on the basis of immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam).

"The trial court's ruling on the plea is reviewed de novo on appeal." *Johnson*, 572 S.W.3d at 664. In reviewing a plea to the jurisdiction, we begin with the plaintiff's live pleadings and determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. In making this assessment, we construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the plaintiff's intent. *Id*. "Parties may submit evidence at the plea-to-the-jurisdiction stage, and the trial court's review generally mirrors the summary judgment standard." *Johnson*, 572 S.W.3d at 664 (citing *Sampson v. University of Tex.*, 500 S.W.3d 380, 384 (Tex. 2016)). Thus, we review the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 221, 227-28).

When the jurisdictional facts implicate the merits of a plaintiff's claims, as they do in this case, the party asserting the plea must overcome a burden similar to the movant's burden on a traditional-summary-judgment motion. *See Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.) (citing *Miranda*, 133 S.W.3d at 228; *Hendee v. Dewhurst*, 228 S.W.3d 354, 367 (Tex. App.—Austin 2007, pet. denied)). To meet this burden, the defendant asserting the plea must present evidence to support its assertion, which then shifts the burden to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and

the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. "Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.).

## DISCUSSION

**Premises-liability claims**

The Texas Tort Claims Act provides a limited waiver of governmental immunity for claims such as Quinlan's that allege personal injury caused by a premises defect. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .022; *State v. Shumake*, 199 S.W.3d 279, 281 (Tex. 2006). However, the Tort Claims Act does not waive immunity for such claims that are based on "the failure of a governmental unit to perform an act that the unit is not required by law to perform" or "a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.056. This is known as the "discretionary powers" exception to the waiver of governmental immunity. *Id*. "The exception's purpose is to avoid judicial review or interference with those policy decisions committed to the other branches of government." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (citing *State v. Terrell*, 588 S.W.2d 784, 787 (Tex. 1979)). "The provision generally preserves immunity not only for the [government]'s

7

public policy decisions, but also for the [government]'s failure to act, when no particular action is required by law." *Id.*; *see also State v. San Miguel*, 2 S.W.3d 249, 250–51 (Tex. 1999).

The "touchstone" for Section 101.056 is "discretion." *Johnson*, 572 S.W.3d at 667–68. Accordingly, the question in this case is whether Quinlan's claims implicate discretionary or non-discretionary actions by the City. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 416 (Tex. 2008) ("[T]he City is immune from liability for discretionary decisions concerning the expenditure of limited resources for the safety of its citizens."). "An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment." *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam), *overruled on other grounds by Denton County v. Beynon*, 283 S.W.3d 329 (Tex. 2009). Whether a governmental activity is discretionary is a question of law. *Miguel*, 2 S.W.3d at 251.

There are two tests that aid courts in determining whether a governmental activity is discretionary. One test "distinguishes the design of public works, for which there is immunity, from their maintenance, for which there is not immunity." *Flynn*, 228 S.W.3d at 657. "Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions." *Rodriguez*, 985 S.W.2d at 85. "Likewise, decisions about installing safety features are discretionary decisions for which the State may not be sued." *Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam). On the other hand, a governmental entity may be sued for failing to maintain public works that the entity is obligated to maintain. Thus, for example, "while the government is not liable for designing a bridge without lighting, it may be

liable for failing to maintain the lighting on a bridge designed to be illuminated." *Flynn*, 228 S.W.3d at 657–58.

The other test "distinguishes between policy-level decisions and operational-level decisions." *Id*. at 657. "When the government in the exercise of its discretion decides to act . . . a distinction is drawn between the negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of policy, for which immunity is waived." *Id*. (citing *Terrell*, 588 S.W.2d at 788); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). Thus, for example, a water district's "decision to release water from a spillway constitutes policy formulation for which the water district is immune," but "the subordinate decision of determining the volume of the outflow is policy implementation for which the district is not immune." *Flynn*, 228 S.W.3d at 657.

"Although described at times as two distinct inquiries, both of these 'tests' have the effect of distinguishing 'between policy-level decisions and operational-level decisions.'" *Johnson*, 572 S.W.3d at 665. "The design versus maintenance 'test' is simply the policy-level versus operational-level test applied to public works." *Id*. "Of course, neither 'design' nor 'maintenance' appears in the text of section 101.056." *Id*. "For that matter, neither do the terms 'policy-level' or 'operational-level.'" *Id*. "The words of section 101.056 protect a governmental entity's failure to act or its decision not to act (or its failure to make any decision at all) on matters within 'the discretion of the governmental unit.'" *Id*. at 665–66. "They do not protect a governmental entity's failure to act when a particular action is 'required by law.'" *Id*. at 666.

In this case, some of Quinlan's allegations involve discretionary design decisions regarding the safety features of the premises, specifically her allegations that the City "failed to install railings between the patio and the street," "failed to warn Plaintiff and other patrons of the

danger of a sudden drop from the patio to the street," "failed to make level the patio and the street," and "was obligated to elevate the street and/or provide appropriate modifications to the patio and surrounding area to make such premises safe for patrons." There are numerous cases holding that governmental immunity is not waived for these and similar design defects. *See, e.g.*, *Ramirez*, 74 S.W.3d at 867 (State retained immunity for claims related to design of highway and failure to install safety features); *Rodriguez*, 985 S.W.2d at 86 (State retained immunity for claims related to design of detour and warning signs); *City of Austin v. Silverman*, No. 03-06-00676-CV, 2009 WL 1423956, at *3 (Tex. App.—Austin May 21, 2009, pet. denied) (mem. op.) (City retained immunity for claims related to design of sidewalk, lighting in surrounding area, and City's decision not to install railing or warning sign); *University of Tex. Health Sci. Ctr. v. Bruen*, 92 S.W.3d 24, 27 (Tex. App.—San Antonio 2002, pet. denied) (university retained immunity for claims related to design of auditorium ramp, including that there was no difference in color between ramp's carpet and carpet on auditorium's floor and that university failed to warn of dangerous condition with railing or other device to prevent stepping off side of ramp); *Mogayzel v. Texas Dep't of Transp.*, 66 S.W.3d 459, 465-66 (Tex. App.—Fort Worth 2001, pet. denied) (State retained immunity from claims related to lack of barriers or guardrails on highway as originally designed). Moreover, there is nothing in the Agreement between the City and Guero's that obligates the City to take such specific actions regarding the design of the premises. Accordingly, we conclude that the City's immunity is not waived for these allegations.

However, Quinlan's other allegations present a closer call on the question of the City's discretion. The City, by entering into the Agreement with Guero's, created a policy whereby it largely delegated to Guero's the responsibility for maintaining the premises but retained considerable control of how the premises would be maintained. Although Guero's was

to "strictly comply" with various maintenance requirements, it was the City that specified what those requirements would be, including that no signs or banners be placed or permitted on the premises and that any "[f]urnishings shall not extend or overhang outside of the permitted area, constitute a danger to the health or safety of a patron or the public, violate any other ordinance that governs the use of public right of way, or interfere with or obstruct the public right of way." Additionally, Guero's was to acknowledge that the area covered by the City's permit "constitutes a portion of a public right-of-way and agree[] that use herein permitted shall be done in compliance with all codes, ordinances and regulations," which gave the City further control over what Guero's could and could not do on the premises. The Agreement further provides that the City "shall at all times have the right to enter the Premises to inspect, improve, maintain, alter or utilize the Premises in any manner authorized to the City." Thus, the Agreement contemplates at least the possibility of the City inspecting, improving, maintaining, altering, or utilizing the premises.

In similar cases involving government-owned premises, courts have held that immunity is waived for a governmental entity's failure to maintain the premises or its negligent implementation of policy regarding the maintenance of the premises. For example, in *City of Irving v. Seppy*, survivors brought a wrongful-death action against the City of Irving after Seppy, a volunteer at a theater, fell from a catwalk in the theater and died from his injuries. 301 S.W.3d 435, 439–40 (Tex. App.—Dallas 2009, no pet.). The plaintiffs alleged that the City, which owned the theater, was negligent in failing to (1) maintain the catwalk in a reasonably safe condition; (2) adequately warn Seppy of the catwalk's unsafe condition; and (3) fix or repair the dangerous condition of the catwalk. *Id*. at 442. Construing the plaintiff's pleadings liberally, the court concluded that "the allegations against the City attack the condition of the catwalk at the

11

time of Seppy's accident, rather than decisions relating to the design of the catwalk, and that the Seppy Family's allegations show an intent to prove the City's claimed failure to maintain and fix the catwalk caused their injuries." *Id*. Similarly, in this case, Quinlan's allegations involving the Agreement address the changed conditions on the premises at the time of Quinlan's fall from the patio, which, according to Quinlan, resulted at least in part from the City's negligent implementation of the Agreement.

In *Texas Department of Transportation v. Pate*, the jury found that the Department was liable for the wrongful deaths of three young people who were killed in a pickup truck at a highway intersection. 170 S.W.3d 840, 843 (Tex. App.—Texarkana 2005, pet. denied). The survivors sued the Department under a premises liability theory, alleging that the Department "did not keep the trees at the intersection trimmed back enough to provide sufficient visibility" for the driver of the truck to see and avoid oncoming traffic as he approached the intersection. *Id*. The Department argued that it was immune from suit because "it can design its roads however it chooses and that it has no duty to 'provide a clear line of sight distance from the stop line.'" *Id*. at 844. The appellate court disagreed, concluding that the Department was required by law to maintain the roadways, including provisions in the Transportation Code that gave the Department "exclusive and direct control of all improvement of the state highway system." *Id*. at 844-45. Here, Quinlan is similarly alleging that the City owned the patio, exercised control over the maintenance of the patio, and negligently implemented its maintenance policy, as specified in the Agreement, by allowing Guero's to obstruct the patio.

At this stage of the litigation, we do not know the extent to which the City exercised its rights under the Agreement to "inspect, improve, maintain, alter, or utilize" the

12

premises or the extent to which the City monitored and enforced Guero's compliance with the Agreement. Those are fact questions ultimately for the jury to decide.

The dissent contends that we are relying on "additional, hypothetical facts" to establish jurisdiction and that "it was Quinlan's burden to allege facts to affirmatively demonstrate that the City's immunity either does not apply or has been waived." However, it was the City's burden, as the party asserting the plea to the jurisdiction, to "meet the summary judgment standard of proof." *Miranda*, 133 S.W.3d at 228. "Under this procedure, the burden is on the defendant to put forth evidence establishing as a matter of law that the trial court lacks subject-matter jurisdiction." *City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.); *see also Miranda*, 133 S.W.3d at 228 ("By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000))). The plaintiff does not have a similar burden to establish jurisdiction "as a matter of law." "We simply require the plaintiff[] . . . to show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228.

By presenting evidence of the Agreement between the City and Guero's, Quinlan has shown that there is a disputed material fact regarding the jurisdictional issue, specifically the degree to which the City exercised control over the maintenance of the premises. Construing the pleadings liberally and viewing the evidence in the light most favorable to Quinlan, the Agreement constituted a policy by the City regarding the maintenance of the premises, and some of Quinlan's claims allege a negligent implementation of that policy by the City, specifically her claims that the City "was negligent in the implementation of policy and/or its responsibilities regarding the patio and the Agreement with Guero's," "allowed Guero's to obstruct and/or

13

mislead Plaintiff regarding the drop from the patio and the street by the placement of furniture, tables and plants on the patio," "maintained tables and chairs and plants on the patio, which had the effect of obstructing the street and confusing the patron about the sharp drop immediately following the patio entrance," "assumed contractual obligations to monitor and enforce violation by Guero's of the patio and Premises," and that the Agreement "precluded obstruction/confusion by Guero's of the patio and further obligated the City of Austin to monitor the patio and take enforcement action against Guero's." We conclude that the evidence raises at least a fact question as to whether the City's immunity is waived for these allegations. Accordingly, the district court did not err in denying the plea to the jurisdiction for these allegations.

The City argues that Quinlan's negligent-implementation-of-policy claims fail for two reasons. First, it argues that Quinlan has no standing to bring a suit to enforce terms of the City's Agreement with Guero's because she is not a party or a third-party beneficiary to the contract. However, construing the pleadings liberally and "with an eye to the pleader's intent," Quinlan is not alleging a breach of contract but is instead alleging that the City was negligent in implementing its policy, as set forth in its Agreement with Guero's, to require Guero's to maintain the premises. In other words, Quinlan is not suing to enforce the Agreement. Rather, she is suing the City for negligently implementing its maintenance policy regarding the premises, and the Agreement is evidence of the City's policy.[1]

---

[1] The dissent "question[s] Quinlan's standing to assert claims against the City . . . based on the City's contractual obligations under its agreement with Guero's" and contrasts this case with *City of Saginaw v. Cruz*, No. 05-19-01141-CV, 2020 WL 5054802 (Tex. App.—Dallas Aug. 27, 2020, no pet.) (mem. op.). In *Saginaw*, there was a construction contract between the City of Saginaw and an engineer to reconstruct and widen a roadway, and a motorist who had been injured on the roadway sued the City and the engineer for negligence. *Id*. at \*1. The City filed a plea to the jurisdiction, which the trial court denied. *Id*. The appellate court affirmed, concluding that the construction contract, which included a provision that made the engineer the

14

Second, the City argues that its decision whether to enforce the Agreement's provisions was "inherently discretionary." As support for this assertion, the City references the portion of the Agreement providing that if Guero's fails to comply with its maintenance obligations, "the City may at its sole discretion terminate this Agreement as provided herein or take measures as it determines necessary to bring the Premises into compliance with the terms hereof." However, the City's discretion to "terminate" the Agreement and to "take measures to bring the premises into compliance with the terms of the Agreement" does not mean that the City has no obligations regarding the premises. According to the allegations in Quinlan's petition, both Guero's and the City control the premises, with the City having the ultimate say in how the premises are used and maintained. The Agreement provides that Guero's must "strictly comply" with the City's maintenance requirements and that Guero's use of the premises "shall be done in compliance with all codes, ordinances and regulations." The Agreement further provides that the City "has the right to enter the Premises to inspect, improve, maintain, alter or utilize the Premises in any manner authorized to the City." Thus, the Agreement reflects a policy by the City to control and monitor Guero's maintenance of the premises to ensure compliance with the City's requirements, and the City's immunity is waived for any negligent implementation of that policy.

City's "representative during construction," was sufficient to raise a fact question as to whether the City had constructive knowledge of an alleged defect in the roadway. *Id*. at *6. The dissent concludes that the circumstances in this case are "notably different from a governmental entity's agency-like relationship with a third party" that existed in *Saginaw*. However, an agency relationship between the City and Guero's is not required for the City to be liable in this case. Rather, the City's liability depends on the extent to which the City exercised its rights under the Agreement "to inspect, improve, maintain, alter or utilize the Premises in any manner authorized to the City," which is a fact question for the jury to decide.

15

**Joint-enterprise liability**

Quinlan additionally alleges that the City's immunity is waived under a "joint enterprise" theory of liability. The Texas Tort Claims Act waives governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). "Joint enterprise liability makes 'each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'" *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (quoting *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974)). Therefore, if Guero's and the City entered into a "joint enterprise," and if the City would have been liable for Guero's negligence had the City been a private person, then the City would not have governmental immunity. *See id*.

The essential elements of a joint enterprise are (1) an Agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.[2] *Id*. We conclude that in this case, at least the third element is absent.

A "community of pecuniary interest" refers to a monetary interest that is "common among the members of the group—it must be one 'shared without special or

---

[2] The "equal right of control" element does not mean equality in the literal sense of the word but requires that each member of the group have "some voice and right to be heard" in the direction of the enterprise that is "authoritative," not merely the right to make "suggestions" that the other group members "could adopt or reject" at will. *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995); *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14–15 (Tex. 1974).

16

distinguishing characteristics.'" *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 531 (Tex. 2002) (quoting *Ely v. General Motors Corp.*, 927 S.W.2d 774, 779 (Tex. App.—Texarkana 1996, writ denied)). Thus, evidence that each member of the group benefited financially in some way from the Agreement is not sufficient. *See id.* Rather, a "community of pecuniary interest" is shown by such evidence as shared financial resources, pooled funds, or joint monetary investments in the enterprise. *See Able*, 35 S.W.3d at 614; *Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 58 S.W.3d 263, 276 (Tex. App.—Fort Worth 2001, pet. denied); *see also Stroup v. MRM Management, Inc.*, No. 03-17-00534-CV, 2018 WL 5074692, at *3 (Tex. App.—Austin Oct. 18, 2018, no pet.) (mem. op.).

In this case, there is no evidence of a "community of pecuniary interest" between Guero's and the City. Guero's paid money to the City for a permit to operate a sidewalk café as part of its restaurant business, and although the City undoubtedly receives sales taxes from the business that Guero's generates, there is no evidence that Guero's and the City shared financial resources, pooled funds, or made joint monetary investments in the café, nor is there any evidence that Guero's shared its revenue from the sidewalk café with the City or that the City shared its sales tax revenue with Guero's. Thus, there is no fact issue as to whether Guero's and the City share a "community of pecuniary interest."

Additionally, "a contract entered into by a local government entity is not a joint enterprise for liability purposes." Tex. Loc. Gov't Code § 271.160. Accordingly, the Agreement between the City and Guero's cannot give rise to a joint-enterprise theory of liability. *See Fort Bend Cnty. Toll Road Auth. v. Olivares*, 316 S.W.3d 114, 128–29 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that section 271.160 applies broadly to "any contract entered into by a local-government entity"); *see also Zachry Const. Corp. v. Port of Houston Auth. of*

17

*Harris Cnty.*, 449 S.W.3d 98, 107 (Tex. 2014) ("Section 271.160 precludes a finding of joint enterprise.")

We sustain in part and overrule in part the City's first issue. The district court erred in denying the plea to the jurisdiction as to Quinlan's claims relating to the design of the premises and her claims relating to the alleged "joint enterprise" between the City and Guero's. However, the district court did not err in denying the plea to the jurisdiction for Quinlan's claims relating to the City's alleged negligent implementation of its policy regarding the maintenance of the premises.

**Dismissal with prejudice**

In its second issue, the City argues that Quinlan's claims against the City should be dismissed with prejudice. "In general, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). However, when the jurisdictional defects cannot be cured, such as when governmental immunity is conclusively established, dismissal with prejudice is appropriate. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007). Regarding the claims against the City that the district court should have dismissed, summarized above, there are no jurisdictional facts that Quinlan could allege that would bring those claims within the waiver of immunity provisions of the Tort Claims Act. *See, e.g.*, *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016); *Holms v. West Travis Cnty. Pub. Util. Agency*, No. 03-17-00584-CV, 2019 WL 1141870, *5 (Tex. App.—Austin Mar. 13, 2019, no pet.) (mem. op.); *City of Madisonville v. Murders*, No. 10-13-00234-CV, 2014 WL 1518244, at *2

18

(Tex. App.—Waco April 17, 2014, no pet.) (mem. op.). Accordingly, we dismiss with prejudice those claims against the City.

We sustain the City's second issue to the extent it applies to the claims that the district court should have dismissed.

## CONCLUSION

We affirm in part the district court's order as to Quinlan's claims relating to the City's alleged negligent implementation of its policy regarding the maintenance of the premises, reverse in part the district court's order as to Quinlan's claims relating to the design of the premises and her claims relating to the alleged "joint enterprise" between the City and Guero's, and render judgment dismissing those claims.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly
  Concurring and Dissenting Opinion by Justice Goodwin

Affirmed in Part, Reversed and Rendered in Part

Filed: January 28, 2022

19